# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2407

_____

ROBERT SIMON and SUSAN
SIMON,

    Appellants,

    v.

DEER MEADOWS HOMEOWNERS'
ASSOCIATION, INC., a Florida
non-profit corporation, and THE
CITY OF JACKSONVILLE, a
Florida municipality,

    Appellees.

_____

On appeal from the Circuit Court for Duval County.
Karen Cole, Judge.

July 10, 2019

WINOKUR, J.

Robert and Susan Simon brought an action for inverse condemnation against the City of Jacksonville alleging that it committed, and continuously commits, a taking because neighborhood streets dedicated to the City direct storm water to a

pond that sits partially on the Simons' property. The trial court disagreed, and we do as well.[1]

In 1984, a developer and builder created the Deer Meadows subdivision and designed its stormwater system to direct water from the streets into two ponds, one of which is located on lots 15 and 16. The developer recorded a plat depicting the streets and easements (but not the pond), and the City accepted the plat as well as the responsibility to maintain the streets and easements. Lot 16 was first sold in 1986, and the Simons became the fourth owners in 1993. The Simons knew there was a pond on lot 16 that received storm water from the neighborhood and, prior to purchasing the lot, were advised that the then-owners of lot 15 as well as previous owners of lot 16 maintained the pond themselves. Over a decade later, the Simons determined that the City should be responsible for maintaining the pond and, when the City disagreed, filed suit. The Simons' claim for inverse condemnation alleged that the City owns or controls the streets, or both, that the streets are designed to discharge storm water into the Simons' pond, that the City has no property rights to the pond, and that the City is thus using (or "taking") the pond.

The trial court found that the Simons could not assert a claim for inverse condemnation because, even if there had been a taking by the City, it occurred before the Simons (or the three prior owners) purchased the property and there was no evidence that the Simons had been transferred any interest in an inverse-condemnation claim. On appeal, the Simons argue that the City is committing a taking without compensation, that their claim is not barred because the City did not show that its use of the pond was

---

[1] The Simons also challenge the trial court's related order denying declaratory relief that they sought on the questions of whether the Association, or the City, or both, owned easements to the pond, whether they were entitled to use the pond for stormwater treatment, and who was responsible to operate and maintain the pond. They also challenge the trial court's finding that the Association's counterclaim was moot. We affirm the trial court's rulings on these issues without comment.

adverse to all prior owners, and that the Simons' revocation of any existing license to use the pond permits this claim.

In *Department of Transportation v. Burnette*, 384 So. 2d 916, 918-19 (Fla. 1st DCA 1980), the government reversed the natural flow of water drainage to allow for the building of a school, redirecting the flow towards the subject property which "impose[d] a substantial burden" by making half of the property subject to flooding. Later, the owner of the 100-acre property alleged that the government's action prohibited him from building a development he planned to build and constituted a constitutional taking. *Id.* This claim was flawed because the governmental acts complained of were before the plaintiff's purchase of the property; the "land was permanently 'taken,' if at all, some years before" the plaintiff purchased it and it was the prior owners "who were deprived of rights in property, if anyone was[.]" *Id.* at 919-20. Only the owner at the time of the taking has suffered an injury entitling him to recovery:

> The theory is that where the government interferes with a person's property to such a substantial extent, the owner has lost a part of his interest in the real property. Substituted for the property loss is the right to compensation. When the original owner conveys what remains of the realty, he does not transfer the right to compensation for the portion he has lost without a separate assignment of such right.

*Id.* at 920 (quoting *Brooks Inv. Co. v. City of Bloomington*, 232 N.W.2d 911, 918 (1975)).

Here, any governmental acts were taken long before the Simons bought the property.[2] The Simons bought the property knowing that a pond was on it, that the pond received neighborhood stormwater, and that the prior owners had maintained it themselves. The Simons may not purchase the

---

[2] We do not hold that the City's acceptance of a plat and maintenance responsibility for roads and easements for public use could qualify as a taking of a retention pond for purposes of inverse condemnation.

property fully aware and then claim a governmental taking and demand compensation. *See id.* ("If the rule were otherwise, the original owner of damaged property would suffer a loss and the purchaser of that property would receive a windfall."). Contrary to the Simons' contention, this case is not similar to *Brevard County v. Blasky*, 875 So. 2d 6, 10, 12-13 (Fla. 5th DCA 2004), where a revocable written license granted the government permission to use land until the government abruptly asserted title to the property. Rather, a builder and developer designed a subdivision where lot 16 would receive neighborhood storm water, the City accepted responsibility to maintain roads and easements, and the Simons eventually purchased the property. If there was any action taken by the City that could constitute a taking, it was long before the Simons owned the property.

AFFIRMED.

B.L. THOMAS, J., concurs; WETHERELL,[3] J., concurs in result.

————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

————————————

Jeffrey C. Regan and Judson Bradley of Regan, Whelan, Zebouni & Atwood, P.A., Jacksonville, for Appellants.

Joseph D. Pickles and Michel Fox Orr of the Law Offices of Dawson & Orr, P.A., Jacksonville, for Appellee Homeowners' Association; Jason R. Teal, Deputy General Counsel, and Jeffrey C. Close, Assistant General Counsel, Jacksonville, for Appellee City of Jacksonville.

---

[3] Judge Wetherell did not participate in oral argument but he did watch the video recording of the argument.